And our last case this morning is Mary Nabozny v. Optio Solutions. Okay. Mr. Davidson, good morning. Can you hear me? Good morning. Yes, Chief Judge Sykes. Thank you. And you're safe. I am. Thank you. I appreciate you allowing me to appear by remotely on such short notice. Of course. You may proceed. May it please the Court, James Davidson of Greenwald Davidson Radbill for the appellant Mary Nabozny. The issue before the Court is whether Ms. Nabozny adequately alleged a concrete injury sufficient to confer Article III standing. We believe she did. Optio disclosed that she was a debtor to a third party without her consent, resulting in her loss of the ability to control that information. This Court has on several occasions found that the unlawful sharing of private information causes a concrete injury. Most recently in Cothran v. Whitecastle, which is a post-transunion case. There, it was a case involving the Biometric Invasion of Privacy Act. The employer shared an employee's fingerprint to a third party who processed the fingerprint. And in Cothran, this Court found that that sharing was enough to confer Article III standing and that the sharing was a concrete injury. Is there a distinction, Mr. Davidson, between a private disclosure and a public disclosure as the 11th Circuit en banc majority reasoned in Homstein? In other words, apart from the agency theory, why should we treat the disclosure of a consumer's information to a mail vendor itself as a public disclosure when we don't know that even one person meaningfully saw and mentally registered the information about Ms. Novoselic? Thank you, Judge Roedner. So I think the public-private distinction that the 11th Circuit made, as the appellee and the district judge here point out, part of the reason for Section 1692B is to prevent disclosures to friends and family because those types of disclosures lead to marital instability and loss of jobs. And so if you draw a distinction at this needs to be public disclosure, you're really limiting access to the courts for a number of persons who may have their rights violated under the statute but not in a public way. So for instance, if I owe a debt, a debtor, a debt collector who's collecting a debt from me could theoretically reach out to my mom, could go on my LinkedIn page and find all of my LinkedIn contacts and send them can take a lot of actions that are not necessarily public. And if the distinction is the disclosure has to be a public disclosure, then none of those actions would give rise to standing for me to bring a claim in court, which would really limit what Congress was trying to do with the statute. And so I think the public, like I said, the public-private disclosure is problematic. And again, in this court's jurisprudence does not distinguish between public and private disclosure. So in the Fox versus Dakota case, which predated Cothran, which was another biometric invasion of privacy act case, this court found that the unlawful sharing of the plaintiff's data with a third-party database administrator partly supported standing. Conversely, in Gubala versus Time Warner, which was the case under the Cable Communications Act, the court found there was no standing because the information was always maintained in Time Warner's database and not disclosed. But the court did point out that if Time Warner had disclosed that information, not necessarily publicly, but just to anybody, that the results of the standing analysis in that case may be different. Again, I think that the issue here with the court's analysis in terms of essentially requiring publicity, this court has said repeatedly in Godelak and in Persinger that the harm has to be similar in kind, not degree. Judge Peterson in the district court essentially said because this was not a disclosure that was public or sufficiently public, the harm here was not the same as the invasion of privacy towards. But the harm is the disclosure itself and the loss of my client's control of her information over the disclosure, whether that goes to one person, a hundred people, or a million people. What is the world that Ms. Nabozny envisions under the Fair Debt Collection Practices Act? How does she want the debt collector to notify her of the debt? Is it your position that they need to have a printing press on site so that her information remains within the four walls of the debt collector before it's disseminated to her? Yes, Your Honor. Well, I frankly think it's how Congress wrote the statute. So Congress said that absent the five enumerated parties in the statute, a debt collector cannot communicate regarding a debt with any other entity. So correct, unless the debt collector has my client's consent, it's expressly prohibited. And that's really a merits inquiry in our view, not necessarily a standing inquiry. Once the disclosure is made to the third party, the statute has been violated. And so I think Optio's complaints, for lack of a better word, about the process is an issue they really need to take to Congress if they would like the statute changed. But it's not necessarily a standing issue. The standing, we think, is pretty clear. The disclosure of the information, which is private, which she didn't consent to, you know, confers Article III standing. Again, and we're talking at the pleading stage where we really have to allege, you know, facts that support standing. We don't have to prove standing at this point. And I think we've done that by articulating this disclosure, which, again, is in line with the holdings of Fox and of Cawthorne. If the court has no more questions, I'll reserve the rest of my time. Thank you. That's fine. Thank you. Mr. Little. Good afternoon. May it please the court. Brendan Little on behalf of Optio Solutions, LLC. As this court said in Casillas, no harm, no foul. There's no harm here. There can't be any Article III standing. Ms. Dabazi. Do we know if Red Spring has a right to sell the data it receives from Optio? I'm sorry, Judge Rogner, are you asking if Red Spring has the right to sell the data? Yes. Well, that's not necessarily before us on the four corners of the complaint, but the answer to that is no. There is a written agreement between Optio and Red Spring that requires Red Spring to keep the information confidential. It's no different than the situation that the Northern District of Illinois just ruled on in June of 22 in the Stalwart matter where the court imposed a hypothetical and that if a law firm contracted either with an employee or a contractor to assist with litigation related to debt collection, is it a violation if the secretarial or the paralegal accesses that information to help prepare the legal documents. So whether it's an employer or contractor, they're still required to keep that information confidential. And that would be, that's why that agreement between Red Spring and Optio requires Red Spring to keep that information confidential. Importantly, this complaint is devoid of any at all, or that the disclosure of her address, the amount of the debt, the original creditor, her name would be offensive to the reasonable person. And those factors are all important for the right of privacy or the theory of right of the violation of privacy and on the public disclosure of private facts. If we look at Hunstein and its focus on whether mail vendors, employees ever meaningfully see a consumer's private information, why isn't this a factual issue that requires development beyond the face of the complaint before making a decision on standing? Should we at least allow narrow discovery as to how Red Spring's collating and mailing process works in order to determine how many people, if any, would have seen her data? Well, of course, the 11th Circuit disagreed with that premise when they ruled on that issue three weeks ago. But the answer to that question is no, because we're talking about intangible harm here, we have to look at what the intent of what Congress was, one, trying to protect, and then if we have a common-law analog or a similar tort. Mr. Davidson talked about 1692B and 1692C of the Fair Debt Collection Practices Act. And yes, that does preclude third-party disclosure in the context of contacting one's employer, contacting one's family member or neighbors, but the idea of making sure that the consumer's employment is protected or not causing a rift in personal relationships. Nowhere within the FDCPA does it preclude disclosure of using a letter vendor or using employees or contracts. But, you know, Congress could have written it that way. Congress took the time to outline these five entities or types of people that are exempt, and they didn't write in there, we also exempt subcontractors performing purely ministerial functions like mailing letters. That's correct, but it's clear that Congress also intended that there would be employees and contractors helping carry out the ministerial acts. For instance, there's a bona fide air defense that if a debt collector does commit a violation of the Fair Debt Collection Practices Act, as long as that debt collector has policies and procedures, maintains them, trains their employees on them, there's a good faith exception and they're excused from that particular violation. So with that in mind, Congress knew that, of course, there had to be employees and contractors that helped carry out the debt collector. When this statute was written, this is all about abusive practices, harassing practices, misleading practices, something to take advantage of the consumer. And here, using this process of submitting this data to a third party letter vendor is not carrying out that process. What is being done is information is being transmitted to that letter vendor in order to send a mandatory disclosure as required by 1692G. Here, Optie was actually giving the consumer its rights that she is entitled to pursuant to the law. And when we look at whether this is akin or similar to that of a common law tort, the plaintiff relies on invasion of privacy. And the plaintiff has cited several opinions, two of them authored by Chief Judge Sykes and Catherine and Fox with respect to the disclosure of private information. But interestingly, at the district court, and Judge Peterson noticed this, the plaintiff has never really advanced a theory of invasion of privacy. Of course, we have four theories of evasion of privacy, intrusion by seclusion, publicity given to private life, and publicity placing a person in false light. And in theory, we only can really be talking about two of those theories, intrusion by seclusion and publicity given to private life. And in Catherine and Fox, the biometric cases, the court said, look, taking someone's biometric data and using that is akin to a trespass. It's intrusion by seclusion. The same thing with now Justice Barrett's decision or opinion in the DCPA case. And she akined the unsolicited or unwanted text messages pursuant to the Telephone Consumer Protection Act as intrusion by seclusion. The same result was reached in Persinger referenced by Mr. Davidson this morning. There, it was a Fair Credit Reporting Act case. And they were accessing, the debt collector was accessing the credit reports of the consumers, and the court said, look, in order to evaluate their ability to pay. And this court said, well, look, that is akin to intrusion by seclusion. Accessing someone's credit report is no different than ruffling through their wallet or their safe. And so those are all intrusion by seclusion cases. This court has not held that a public disclosure of private facts is akin to the harm that's contemplated or the harm that's contemplated. As Judge Robner has indicated, three weeks ago, the 11th Circuit and an en banc review considered this same set of facts and circumstances where a letter vendor was used and data was transmitted to that letter vendor. And the question Your Honor asked about, should the data remain within the four corners of the wall of that debt collector? And the answer is no, as long as there is an agreement between the parties to keep it confidential. And there's no claim that there was any kind of public disclosure here that would run afoul. And so when we're looking at the public disclosure of private facts and what's required, there has to be publication. The 11th Circuit opinion in Hunstein goes at length about what publication is and publicizing to the society as a whole. And the information that's disclosed has to be offensive to the reasonable person. And several district court cases across the country and the disclosure of someone's address and name and a balance amount and the name of an original creditor is not offensive to the reasonable person. So the harm that we're talking about here, the common law analog of the tort of public disclosure of private facts, it's not even close. Well, you can't take it too far because Mr. Davidson raised a good point. And I thought earlier you agreed with him that the publicizing here that the FDCPA is concerned with is not just to the random public but also to family members, close friends. Absolutely. But there's no allegation here that Optio sent this data to family members or friends and there's no allegation here that Revspring turned around and sent that information to Ms. Navazzi's family or friends. This is carrying out a ministerial act and there is no allegation that any human being actually reviewed this information. And to the contrary of Mr. Davidson's point, paragraph 41 of his complaint says that Revspring sends billions with a B of these written communications on an annual basis. It is not physically possible for any human being to look at billions of communications and perform any kind of analysis. Should we allow discovery on the question of how Revspring processes consumer data that proceeds? Judge, I don't think that we should allow discovery on this point because the allegations are not even close enough to the common law tort of public disclosure of private facts. And I think the 11th Circuit went at length in its opinion and BAC opinion. And the 11th Circuit gave great analysis to that. I think they've had three or four bites of the apple to analyze that and ultimately got to the conclusion that they did. So I don't think because the allegations are not even close to the public disclosure of private facts, I don't think that the court should allow discovery. For those reasons, I ask that this court affirm the district court below and thank you. Thank you. Mr. Davidson. Thank you, Your Honor. Just a few very brief points. Mr. Little mentioned the Cothran case and the Fox case and discussed those in the context of the common law analog intrusion by seclusion. I may be misremembering, but I don't believe Cothran references intrusion by seclusion. I think the opinion simply says the disclosure of this information, which was protected without the customer's consent, which didn't give her the right to determine whether that information should be disclosed, was a concrete harm. And, you know, I know those cases involve biometric invasion of privacy act, and so fingerprints, you know, I think in this case, being named a debt collector and being told you're a debt collector, which is humiliating and offensive when that's shared with a third party, is equal in terms of, you know, having your fingerprints disclosed. I, you know, go out on a daily basis. I leave fingerprints everywhere. They're not necessarily some sort of overly private or protected information. They're protected by statute, and that's the same way that Congress protected this debtor information. The only other point I'd make is that Mr. Little raised the fact that the statute was in part written, again, to protect against disclosures to family members and friends and employers, but again, it's written broadly. So those are examples of people that Congress did not want disclosures made to, but they're not limited. The statute is written very broadly to limit all disclosures to companies or entities or persons other than those enumerated in the statute. I have nothing further. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and the court will be in recess.